Percy GRUBB, Plaintiff,

v.

OLIVER ENTERPRISES, INC., d/b/a
Dollar Loan Company.

Civ. A. Nos. 15550, 15976.

United States District Court,
N. D. Georgia,
Atlanta Division.

Nov. 3, 1972.

Stack, O'Brien & Neely, Atlanta, Ga.,
for plaintiff.

Lefkoff & Hanes, Atlanta, Ga., for defendant.

## ORDER

MOYE, District Judge.

On December 17, 1970, Percy Grubb borrowed $55.94 from the Dollar Loan Company. The disclosed annual percentage rate of interest on the loan was 65.46 percent. Although Grubb was obligated to repay Dollar Loan $55.94, he received cash in hand of only $17.27. Dollar Loan Company kept the balance in order to apply $22.73 to a prior unpaid loan, collect statutorily authorized interest charges of $5.59, and pay Grubb's premiums of $10.07 on a credit accident and health insurance plan. Evidently this loan was insufficient to satisfy Grubb's long range financial needs because on April 14, 1971, Grubb returned to Dollar Loan and negotiated another small loan for $55.94 out of which he received cash in

hand of $35.27 after similar deductions were made by the Dollar Loan Company.

Grubb brought two lawsuits against the Dollar Loan Company for alleged violations of the Truth in Lending Act [1] ["the Act"] in connection with each of these loans. The cases have been consolidated and are presently before the Court on Grubb's motion for summary judgment. The question before the Court is whether Dollar Loan Company violated the Truth in Lending Act by using the words "loan fee" on its disclosure statements instead of the words "prepaid finance charge" as required by Regulation Z, 12 C.F.R. § 226.8(d)(2) and (e)(1). The Court finds that Dollar Loan has violated the Act and plaintiff Grubb is entitled to the statutory penalty and attorney's fees awarded by 15 U.S.C. § 1640 (Supp.1972).

The Georgia Industrial Loan Act authorizes Dollar Loan Company to charge two types of interest. First, Dollar Loan can charge eight percent (8%) interest per year on the face amount of the note.[2] Second, and in addition to the first type of interest, Dollar Loan is authorized to charge a "fee" for making the loan: eight percent (8%) of the first $600 and four percent (4%) of the excess. This fee is collected at the time the loan is made and is not refunded to the borrower except insofar as it is required to be applied to any new loan which the borrower may negotiate with that lender within 15 days after prepaying the old loan (all of which must be within a six-month or two-year period, as applicable).[3] In the instant case, Dollar Loan charged Percy Grubb interest of $1.11 and a "loan fee" of $4.48 on a note in the amount of $55.94. Percy Grubb contends that the $4.48 "loan fee" should have been referred to on Dollar Loan's disclosure statement as a "prepaid finance charge" in order to comply with the requirements of the Truth in Lending Act and Regulation Z. Dollar Loan contends that the $4.48 "loan fee" is not

1. 15 U.S.C. § 1601, et seq. (Supp.1972).

2. Ga.Code Ann. § 25–315(a) (1971) provides:

"*Maximum rate of charge.*—Every licensee hereunder may loan any sum of money not exceeding $2,500 for a period of two years or less, and may charge, contract for, collect and receive interest and fees, and may require the fulfillment of conditions on such loans as hereinafter provided:

"(a) *Basic interest; advance discounts.* —Charge contract for, receive and collect interest at a rate not to exceed eight per cent. per annum of the face amount of the contract, whether repayable in one single payment or repayable in monthly or other periodic installments. On loan contracts repayable in 18 months or less, the interest may be discounted in advance, and on contracts repayable over a greater period, the interest shall be added to the principal amount of the loan. On all contracts, interest or discount shall be computed proportionately on equal calendar months."

3. Ga.Code Ann. § 25–315(b) (1971) provides:

"*Fee for making loan.*—In addition thereto, charge, contract for, receive, or collect at the time the loan is made, a fee in an amount not greater than eight per cent. of the first $600 of the face amount of the contract, plus four percent of the excess: Provided, however, that such fee shall not be carried or collected on that part of a loan which is used to pay or apply on a prior loan, or installment of a prior loan from the same licensee to the same borrower made within the immediately preceding six months period: Provided, however, if the loan balance is $100 or less, the said period shall be two months, not six months: Provided, further, that nothing contained in subsections (a) and (b) of this section shall be construed to permit charges, interest or fees of any nature whatsoever in the aggregate in excess of the charges, interest and fees which would constitute a violation of section 57–117 and the repeals hereinafter set forth in this Chapter shall in no wise affect section 57–117 and section 57–9901. If a borrower prepays his entire loan to a licensee and within the following 15 days makes a new loan with that licensee (and if this is done within the six-month period or the two-month period above described, as may be applicable), the fee may be charged only on the excess by which the face amount of the new contract exceeds the amount which the borrower repaid to that licensee within the said 15-day period."

a prepaid finance charge and is properly disclosed by the term "loan fee."

The Truth in Lending Act and the regulations prescribed thereunder were designed to require creditors to make certain uniform disclosures in consumer credit transactions in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." [4] Percy Grubb's loan is covered by Regulation Z, 12 C.F.R. § 226.8, which specifies the disclosures creditors must make and uniform terminology they must use when extending loans and other nonsale credit. Section 226.8 provides in part:

"(d) *Loans and other nonsale credit.* In the case of a loan or extension of credit which is not a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

\*    \*    \*    \*    \*    \*

"(2) *Any amount referred to in paragraph (e) of this section required to be excluded from the amount in subparagraph (1) of this paragraph, using, as applicable, the terms "prepaid finance charge"* and *"required deposit balance,"* and, if both are applicable, the total of such items using the term, *"total prepaid finance charge and required deposit balance."*

\*    \*    \*    \*    \*    \*

"(e) *Finance charge payable separately or withheld; required deposit balances.* The following amounts shall be disclosed and deducted in a credit sale in accordance with paragraph (c) (6) of this section, and in other extensions of credit shall be excluded from the amount disclosed under paragraph (d)(1) of this section, and shall be disclosed in accordance with paragraph (d)(2) of this section:

"(1) *Any finance charge paid separately, in cash or otherwise, directly or indirectly to the creditor or with the creditor's knowledge to another person, or withheld by the creditor from the proceeds of the credit extended.*[12]"

"[12]. Finance charges deducted or excluded as provided by this paragraph shall, nevertheless, be included in determining the finance charge under § 226.4."

[12 C.F.R. 226.8(d) and (e) (emphasis added)]

■ The above-quoted sections of Regulation Z state, in essence, that a finance charge which is paid separately to the creditor or withheld by the creditor from the proceeds of the credit extended, must be disclosed using the words "prepaid finance charge." The "fee" for making a loan which is authorized by the Georgia Industrial Loan Act is a finance charge which is paid separately to the creditor or withheld by the creditor from the proceeds of the credit extended and therefore must be labeled and disclosed as a "prepaid finance charge" as required by 12 C.F.R. § 226.8 (d)(2) and (e)(1). To rule otherwise would frustrate the purposes of the Act and allow creditors to use varying terminology which would confuse the average person who attempts to compare his credit alternatives.

■ Moving to the issue of damages, the Court awards plaintiff $200 pursuant to Section 1640 of the Act which provides that the civil liability for violating the Act shall be "twice the amount of the finance charge" with a minimum award of $100 and a maximum award of $1,000.[5] Since Dollar Loan violated the Act in connection with two loans, Mr. Grubb is entitled to the $100 minimum award for each loan which amounts to a total award of $200.

This order of summary judgment for the plaintiff was announced in open court and subsequent thereto evidence was taken on the issue of attorney's fees which are also awarded pursuant to 15 U.S.C. § 1640(b) (Supp.1972). After due consideration of the evidence and

---

4. 15 U.S.C. § 1601 (Supp.1972).

5. 15 U.S.C. § 1640(a) (Supp.1972).

argument presented by counsel for both parties, the Court awards the plaintiff's attorney $1,750 in attorney's fees for which the defendant is hereby liable.

In view of the above ruling, the Court need not reach the other issues presented by the parties in this case and also denies defendant's motion for a new trial based on newly discovered evidence.[6]

6. Subsequent to the in-court announcement of summary judgment for the plaintiff, the defendant submitted a motion for a new trial supported by an informal opinion letter from the Federal Trade Commission which stated that a disclosure statement similar to the one in the instant case appeared to be in substantial compliance with the Act and Regulation Z. As the letter states, it is only an "informal staff opinion which is advisory in nature and is in no way binding upon the Commission" and accordingly not binding on this Court.