Rose E. JONES, Plaintiff-Appellant,

v.

COMMUNITY LOAN & INVESTMENT CORPORATION OF FULTON COUNTY, Defendant-Appellee.

Homer Lee SLATTER, Plaintiff-Appellant,

v.

AETNA FINANCE COMPANY, Defendant-Appellee.

Deleaner HAMMOND, Plaintiff-Appellant,

v.

PUBLIC FINANCE CORPORATION, Defendant-Appellee.

Nos. 74–3586, 74–3975, 74–4183.

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1976.

David G. Crockett, Atlanta, Ga., for Rose E. Jones.

E. Lund Baety, Atlanta, Ga., for Homer Lee Slatter and Deleaner Hammond.

Sewell K. Loggins, Douglas N. Campbell, Robert N. Dokson, Robert E. Stagg, Jr., Myron N. Kramer, Atlanta, Ga., for Beneficial Finance amici curiae.

F. Carlton King, Jr., W. Rhett Tanner, Atlanta, Ga., for Community Loan & Inv.

J. Norwood Jones, Jr., Lewis N. Jones, Atlanta, Ga., for Aetna Finance Co.

Allen I. Hirsch, Atlanta, Ga., for Public Finance Corp.

Before TUTTLE, THORNBERRY and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The appeals in these consolidated Regulation Z Truth-in-Lending cases turn on whether the statutory loan fees imposed pursuant to Georgia law were required to be disclosed as "prepaid finance charges." To resolve the issue we must harmonize the federal statutory scheme, its implementing regulations and the applicable Georgia statutes. Because these loan fees were fully earned at the time the loans were made, Regulation Z required that they be disclosed as "prepaid" to meaningfully inform the borrower of the prepaid nature of such fees. This is true despite the fact that the loan companies effected the collection of such fees by adding them to the other amounts of credit extended and allowed repayment to be made over the life of the loan. The judgments appealed from which approved notes that failed to disclose the "prepaid" status of such loan fees are reversed.

The instant actions seeking statutory damages, costs and attorneys' fees were brought under the Consumer Credit Protection Act, 15 U.S.C. § 1640. Each action alleges various violations of the Act in connection with its subject loan. One assertion common to all causes is the contention that the loan or service fees charged under Georgia law were required by Regulation Z, 12 C.F.R. Part 226, to be labeled as a "prepaid finance charge" and that for lack of proper labeling the lenders are liable to the borrowers for the Act's statutory damages. Our view that the contention is correct makes the issue dispositive in all appeals.

Regulation Z defines "credit" as the right granted by a lender to a customer to defer payment of debt, or to incur debt and defer its payment. 12 C.F.R. § 226.2(1). In the case of loans such as the ones involved in the instant actions, Regulation Z requires that any penalty charge for prepayment be described. 12 C.F.R. § 226.8(b)(6). In addition, it requires disclosure of the amount of credit which will be paid to the customer, or for his account to another person, under the term "amount financed." This latter requirement is subject to an express proviso which is the fulcrum of the present appeals. It mandates that "[a]ny finance charge paid separately, in cash or other-

wise, directly or indirectly to the creditor . . . or withheld by the creditor from the proceeds of the credit extended" shall be excluded from the "amount financed" and disclosed as a "prepaid finance charge." 12 C.F.R. § 226.8(d) and (e)(1).[1]

On August 31, 1973, the Board issued an interpretative amendment to Regulation Z to make it clear "that the *typical* 'add-on' or 'discount' charge or other precomputed finance charge . . . need not be labeled a 'prepaid' finance charge." (emphasis added). In essence, this interpretative amendment advised that "add-on, discount or other precomputed finance charges which are reflected in the face amount of the debt instrument as part of the customer's obligation" should be excluded from the "amount financed" and did not require labeling as "prepaid." The Board's amendatory language reasoned: "The concept of prepaid finance charges was adopted to insure that the 'amount financed' reflected only that credit of which the customer had the actual use." 38 Fed.Reg. 23513.[2]

1. (d) *Loans and other nonsale credit.* In the case of a loan or extension of credit which is not a credit sale, in addition to the items required to be disclosed under paragraph (b) of this section, the following items, as applicable, shall be disclosed:

(1) The amount of credit, excluding items set forth in paragraph (e) of this section, which will be paid to the customer or for his account or to another person on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

(2) Any amount referred to in paragraph (e) of this section required to be excluded from the amount in subparagraph (1) of this paragraph, using, as applicable, the terms "prepaid finance charge" and "required deposit balance," and, if both are applicable, the total of such items using the term, "total prepaid finance charge and required deposit balance."

(3) Except in the case of a loan secured by a first lien or equivalent security interest on a dwelling and made to finance the purchase of that dwelling, the total amount of the finance charge,[11] with description of each amount included, using the term "finance charge."

(e) *Finance charge payable separately or withheld; required deposit balances.* The following amounts shall be disclosed and deducted in a credit sale in accordance with paragraph (c)(6) of this section, and in other extensions of credit shall be excluded from the amount disclosed under paragraph (d)(1) of this section, and shall be disclosed in accordance with paragraph (d)(2) of this section:

(1) Any finance charge paid separately, in cash or otherwise, directly or indirectly to the creditor or with the creditor's knowledge to another person, or withheld by the credi- tor from the proceeds of the credit extended.[12]

[12] Finance charges deducted or excluded as provided by this paragraph shall, nevertheless, be included in determining the finance charge under § 226.4.

2. PART 226—TRUTH IN LENDING

Add-on and Discount Finance Charges as Prepaid Finance Charges

This interpretation intends to make [clear] that the typical "add-on" or "discount" charge or other precomputed finance charge on an instalment contract or other obligation need not be labeled a "prepaid" finance charge.

Part 226 of Title 12 is amended by adding the following section.

§ 226.819 *Prepaid finance charges; add-ons and discounts.*

(a) Section 226.8(c)(6), 226.8(d)(2) and 226.8(e)(1) require that certain finance charges be disclosed as "prepaid finance charges." They also require that such prepaid finance charges be excluded or deducted from the credit extended in arriving at the "amount financed." The question arises whether add-on, discount or other precomputed finance charges which are reflected in the face amount of the debt instrument as part of the customer's obligation, but which are excluded from the "amount financed," must be labeled as "prepaid" finance charges.

(b) The concept of prepaid finance charges was adopted to insure that the "amount financed" reflected only that credit of which the customer had the actual use. Precomputed finance charges which are included in the face amount of the obligation are not the type contemplated by the "prepaid" finance charge disclosure concept. Although such precomputed finance charges are not to be included in the "amount fi-

Against this background of federal statute and regulation, we consider the details of the Georgia loans involved in the instant actions. The plaintiff individuals in each of the consolidated cases borrowed money from different finance companies. The defendant lenders charged the borrowers the maximum 8% per annum rate of interest permitted by Georgia law and also charged the maximum "Fee for making loan" permitted by Georgia law. Ga.Code Ann., § 25–315(a) and (b).[3] The lenders did not label this loan fee as a "prepaid finance charge." It was not included in the "amount financed" total shown on the face of the note. However, the fee was included in the total amount on which the maximum statutory interest charge was computed. The loan fee, the interest so calculated, and the "amount financed" were then totaled and divided into equal installments payable over the life of the loan. Each note contained different prepayment provisions,[4] but none provided for the refund of any part

nanced," they need not be regarded as finance charges "paid separately" or "withheld by the creditor from the proceeds of the credit extended" within the meaning of § 226.8(e) to require labeling "prepaid" under §§ 226.8(c)(6) and 226.8(d)(2). They are "finance charges", of course, to be disclosed under §§ 226.8(c)(8) and 226.8(d)(3).

3. 25–315. Maximum rate of charge.—Every licensee hereunder may loan any sum of money not exceeding $2,500 for a period of two years or less, and may charge, contract for, collect and receive interest and fees, and may require the fulfillment of conditions on such loans as hereinafter provided:

(a) Basic interest; advance discounts.—Charge, contract for, receive and collect interest at a rate not to exceed eight per cent. per annum of the face amount of the contract, whether repayable in one single payment or repayable in monthly or other periodic installments. On loan contracts repayable in 18 months or less, the interest may be discounted in advance, and on contracts repayable over a greater period, the interest shall be added to the principal amount of the loan. On all contracts, interest or discount shall be computed proportionately on equal calendar months.

(b) Fee for making loan.—In addition thereto, charge, contract for, receive, or collect at the time the loan is made, a fee in an amount not greater than eight per cent. of the first $600 of the face amount of the contract, plus for per cent. of the excess: Provided, however, that such fee shall not be carried or collected on that part of a loan which is used to pay or apply on a prior loan, or installment of a prior loan from the same licensee to the same borrower made within the immediately preceding six months period: Provided, however, if the loan balance is $100 or less, the said period shall be two months, not six months: Provided, further, that nothing contained in subsections (a) and (b) of this section shall be construed to permit charges, interest or fees of any nature whatsoever in the aggregate in excess of the charges, interest and fees which would constitute a violation of section 57–117 and the repeals hereinafter set forth in this Chapter shall in no wise affect section 57–117 and section 57–9901. If a borrower prepays his entire loan to a licensee and within the following 15 days makes a new loan with that licensee (and if this is done within the six-month period or the two-month period above described, as may be applicable), the fee may be charged only on the excess by which the face amount of the new contract exceeds the amount which the borrower repaid to that licensee within the said 15-day period.

4. The Jones note provided:
On prepayment of the obligation, any unearned portion of the interest shall be refunded using the Sum of the Digits Rule. The fee is not refundable, however, creditor shall not receive charges in excess of 5% per month and any such excess charges accruing upon prepayment shall be refunded.
The Slatter note provided:
In the event of prepayment in full prior to maturity a refund of that portion of the Finance Charge, designated above as Interest Charges, will be made according to the Rule of 78ths. Loan fees are not subject to refund except that in no event will the Lender retain from the interest charges and fees combined, a rate greater than 5% per month. No refund of under $1.00 will be made.
The Hammond note provided:
PREPAYMENTS: Refunds for prepayment are computed by the sum of the digits method (Rule of 78) on originally scheduled regular charge. Refunds of less than $1.00 are not made.
Georgia law provides a specific refund system upon prepayment of loans. Ga.Code Ann. § 25–317. It applies to prepaid interest and insurance charges but makes no mention of the loan fee charge.

of the loan or service fee except as absolutely necessary to avoid the usury provision of Georgia law.[5]

The definitive opinion by the district court on the proper classification of the Georgia loan fee was written in *Slatter v. Aetna Finance Co.,* 377 F.Supp. 806 (N.D.Ga.1974).[6] There the court distinguished its prior holding in *Grubb v. Oliver Enterprises, Inc.,* 358 F.Supp. 970 (N.D.Ga.1972), which required the Georgia loan fee to be characterized as a "prepaid finance charge." The distinction was based upon what *Slatter* characterized as a difference in the method of fiscal disbursements and accounting followed in the two transactions. *Grubb* involved a $55.94 loan which was refinanced 4 months after it was made by a second loan of the same amount. The *Grubb* court stated that the loan fee there was collected at the time the loan was made and was not refundable except as required by statute in connection with a refinancing, and held such a fee had to be labeled "prepaid" to comply with Regulation Z.[7] *Slatter* reasoned that *Grubb* involved a loan fee "actually withheld at the time of the consummation of the loan," whereas Slatter's loan

fee had been added to the amount financed along with the interest charged to Slatter and the total had been divided by the number of monthly payments involved.[8] This, said the *Slatter* court, constituted the loan fee a charge in the nature of an add-on finance charge within the meaning of the Reserve Board's August 23, 1973 amendment.

The court in *Slatter* was persuaded that the difference in language used by the Georgia legislature in authorizing interest charges under § 25–315(a) and in authorizing loan fees under § 25–315(b)[9] was intended to extend to lenders an option of "receiving or collecting the loan fee 'at the time the loan is made' or of merely charging the loan fee at the time the loan is made and adding it to the principal amount for collection along with the loan payments." Its reasoning went that since the statute made it mandatory to use the add-on method of computing interest on loans for periods greater than 18 months and did not mandate any method for collection of the loan fee, the latter section was permissive. Thus, it read the language permitting a lender to "charge, contract for, receive or collect at the time the loan is

---

**5.** 57–117. (3444, 3445) Rate greater than five per cent. per month prohibited.—No person, company, or corporation shall reserve, charge, or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than five per centum per month, either directly or indirectly, by way of commission for advances, discount, exchange, the purchase of salary or wages, by notarial or other fees, or by any contract, contrivance, or device whatever; save and except only that regularly licensed pawnbrokers, where personal property is taken into their actual physical possession and stored by them, may charge, in addition to said rate of interest, not exceeding 25 cents at the time said property is first taken possession of by them for the storage of said property. This section shall not be construed as repealing or impairing the usury laws now existing, but as being cumulative thereof.

**6.** This issue was also discussed in other unreported cases. *See Howard v. Public Finance Corp.,* C.A. 17725 (N.D.Ga. Sept. 18, 1974); *Heard v. G. A. C. Finance Corp.,* C.A. 18117

(N.D.Ga. June 27, 1974); *McTerry v. Household Finance Corp.,* C.A. 18159 (N.D.Ga. June 21, 1974); and *Hamilton v. G. A. C. Finance Corp.,* C.A. 18163 (N.D.Ga. May 22, 1974).

**7.** *Grubb* was decided prior to the Board's August 23, 1973, interpretative ruling, thus its impact was not discussed.

**8.** Of course we would not differ with the result *Slatter* conceded to be correct under the facts it supposed were before the *Grubb* court. If a lender required a customer to pay over the loan fee in cash at the time the loan was made, the necessity for "prepaid" classification is obvious. We would note, however, that nothing in the language of the *Grubb* opinion supports *Slatter's* distinction. We do not have Grubb's note in the record before us, and *Slatter* does not indicate that extra-opinion documentation was the basis for its view of that transaction. We have not pursued the matter because the accuracy of the distinction does not control the outcome of the appeal as we view the requirement of Regulation Z.

**9.** See note 3, *supra.*

made, a [loan] fee" as allowing the lender two alternatives. It could charge, contract for, or receive the loan fee in any manner it wished or it could collect the fee at the time the loan was made. Not only is this construction at odds with the catch line title of the loan fee paragraph, which is "FEE FOR *MAKING* LOAN," it stands the grammar used by the Georgia legislature on its head and fails to follow the construction placed on this part of the statute by the courts of Georgia.

Georgia courts have consistently refused to hold the maximum interest rate to be usurious where that interest rate was calculated on the total of all amounts financed plus a loan fee which had been added in with all other charges and disbursements and collected over the life of a loan. Georgia's reasoning was that the interest charge calculated in this fashion was not rendered usurious even where the loan fee was repaid in installments because the fee was due at the time the transaction originated and was a fee collected "for *making* the loan" (emphasis in the original). *Robbins v. Welfare Finance Corp.*, 95 Ga.App. 90, 96 S.E.2d 892, 896 (1957); *accord, McDonald v. G.A.C. Finance Corp.*, 115 Ga.App. 361, 154 S.E.2d 825 (1967).[10] This reasoning controls our decision. Deferring collection of the loan fee by adding it on to the other amounts financed does not change its character as a prepaid fee. Deferring collection of the credit does not cause the credit to be extended at a later date. Regulation Z defines credit as a right the lender grants to the borrower to incur an indebtedness for a loan fee or any other purpose and defer its repayment. The borrower has the use of this credit from the date the loan is made just as he has the actual or constructive use of funds advanced for insurance charges, recording fees and the like.

\Slatter refused to give any weight to the fact that the loan fee was not refundable in the event of prepayment, reasoning that this was a circumstance which occurred *after* the credit had been extended and was controlled exclusively by the borrower. In light of the Regulation Z requirements that any penalty for prepayment must be described and loss of the loan fee was either not mentioned in these notes or was restricted only to the extent necessary to avoid usury,[11] *Slatter* cannot be squared with the letter or the spirit of meaningful, informed disclosure which the Act and Regulation Z sought to promote.

■ There can be no doubt that the *Slatter* court placed great weight on its construction of the Board's 1973 amendment. It is entirely understandable that the court construed this action to give a finance company the right to omit the "prepaid" characterization of the Georgia loan fee if it added the fee on with the add-on interest and collected it over the period of the loan. When the wording used in the amendatory language is read alone, it is susceptible to the misinterpretation that *any* finance charge which was added on to the face amount of the obligation and repaid in installments should not be classified as "prepaid." The problem of interpretation was doubtless compounded by the timing of the ruling, coming as it did after *Grubb* was decided. However, as the preamble to the amendment makes clear, the Board had reference only to the "*typical*" add-on charge. When the amendment is read in its total setting— the entire amendment, Regulation Z, the Act, and the Georgia laws which create and authorize the loan fee charge—it be-

---

10. *E. g., Gentry v. Consolidated Credit Corp.*, 124 Ga.App. 597, 184 S.E.2d 692 (1971); *Robinson v. Colonial Discount Co.*, 106 Ga.App. 274, 126 S.E.2d 824 (1962); *Haire v. Allied Finance Co.*, 99 Ga.App. 649, 109 S.E.2d 291 (1959).

11. See note 4, *supra*.

**648**

comes apparent that the character of this credit cannot be made to depend upon the manner in which the lender may choose to treat it.[12]

The amendment says that "[t]he concept of prepaid finance charges was adopted to insure that the 'amount financed' reflected only that credit of which the customer had the actual use." Whether the borrower has actual use of credit does not hinge on whether it is disbursed to him. As Regulation Z makes it plain, credit has been extended if monies the borrower must repay have been "paid separately, in cash or otherwise, directly or indirectly to the creditor, . . . or withheld by the creditor from the proceeds of the credit extended." 12 C.F.R. § 226.8(b)(6) and (e)(1).

That the loan fee is to be paid by the borrower to the lender is not even open to question. *When* it is to be paid is the issue. Every documentary and financial fact indicates that the lender collects the loan fee at the time the credit is extended. As stated, the loan fee was not a refundable charge. *Robbins* and the other Georgia cases cited above make it plain that the fee is fully earned by the act of extending credit, and that if this were not so, the interest charge as calculated would be usurious. Interest at the maximum statutory rate can only be collected on the full amount of these loan fees in the same manner it was collected on every other part of the "amount financed" because the lender extended credit for this fee in advance. For all of these reasons, this loan fee was an integral part of "that credit of which the customer had the actual use" *at the time the note was signed.*

The loan fee was required by statute and regulation to be shown as a part of the finance charge, 15 U.S.C. § 1605(a)(3), 12 C.F.R. § 226.4(a)(3). But showing it as a finance charge without more would be misleading. As a one-time expense due at the outset, the loan fee is different from a typical add-on charge which may later be recovered if not earned or expended with the passage of time over the life of the transaction. The necessity to make this difference plain to the borrower is precisely why Regulation Z requires that the customer be told that this segment of the finance charge is prepaid. If it is to be interpreted in a manner consistent with the Act's purpose, the amendment cannot be held to have changed this concept, and it did not do so. It must not be held to encompass charges which are in point of economic fact prepaid by credit extended at the outset of the transaction which, to enhance the lender's income or facilitate the transaction, is deferred in its repayment.

■ The district court gave controlling weight to the fact that the lender dealt with the fee as an amount added on to the principal and collected in installments over the life of the loan. Such consideration misplaces the add-on form of repayment over the fee's substance as prepaid credit. The heart requirement of the Consumer Credit Protection Act is disclosure which is meaningful to the borrower. The obvious intent of requiring the labeling of an item as "prepaid" would be to inform the bor-

---

**12.** We certainly intend no criticism of the district court's obvious effort to bring order from this veritable chaos of technical language. This court well recognizes the literal deluge of truth-in-lending cases which the bar of the district court has poured on judges already inundated by one of the heaviest docket loads in the circuit. Chief Judge Edenfield, in *Mullinax v. Willett Lincoln-Mercury, Inc.,* 381 F.Supp. 422 (N.D.Ga., 1974), observed:

The number of truth in lending cases filed with this court is staggering. During the period of March 14, 1973 through July 31, 1974, some 725 truth in lending cases have been referred to the bankruptcy judges. During the same period 385 of these cases were finally disposed of by the referees, with almost no appeals and very few petitions for review. Truth in lending cases currently represent 28% of all cases being filed with this court. Handled by the judges as ordinary litigation, this simply would not have been possible.

(Footnotes omitted.)

rower that the charge indicated has already been paid out by him or for his account at the time of the extension of the credit and, as importantly, that it is a charge which will not be returned if the loan is paid off prior to maturity. In every one of these three cases (1) the Georgia loan fee was added to the other items composing the "amount financed" and the lender calculated interest at the maximum statutory rate on the total of these two amounts, and (2) the loan fee was not described as a refundable item in the provision of the note related to calculating prepayment refunds.[13]

The failure to describe such a finance charge as "prepaid" in these loan instruments entitles plaintiff-appellants to relief under the Act. We need not and do not reach the remaining assignments of error. The several judgments appealed from are reversed and the causes remanded to the district court for further proceedings not inconsistent with this opinion.

Reversed and remanded.

---

13. Georgia law requires that proportional credit must be given if the note is a refinancing of a prior loan or if any new borrowing is made within 15 days of prepayment. See note 3, *supra.*