18

(No. 106080—Decided October 21, 1964.)

Rossetti, J. The plaintiff filed a lawsuit against the defendants claiming that there is due the plaintiff from the defendants Fisher the sum of $8,998.96 with interest from February 1, 1962. Defendants Fisher filed an answer requesting that the interest of the plaintiff and the defendants be determined.

The plaintiff filed a motion for summary judgment and affidavit in support of the motion. Stipulations were agreed to between the parties herein and this matter now comes on the hearing of the motion for summary judgment.

The defendants, Daniel Arthur Fisher and Dorothy L. Fisher entered into a written contract with William J. Savage and Mildred E. Savage to purchase certain premises in Louisville, Ohio.

The plaintiff loaned the Fisher defendants $9,150 and they executed a note and mortgage for that amount.

A closing of this transaction was held in the office of the plaintiff and certain costs were paid by the Fisher defendants, among which was item F in the fourth stipulation in the amount of $91.50 designated as "origination charge," which is one per cent of the loan.

Another cost item paid by the Fisher defendants is the so-called loan discount fee of $823.50 which is nine per cent of the face amount of the loan. This was authorized to be deducted from the sales price by the sellers of the property.

The item of $823.50 has been referred to as a loan discount fee, and again in the plaintiff's brief it has been referred to as "points." Whatever it is called, the simple fact is that nine per cent of the loan was deducted and retained by the plaintiff bank, amounting to $823.50. However, as between the plaintiff bank and the defendant borrowers this sum or item was not deducted which means that the bank received in addition to the regular interest charged on the loan of $9,150 the sum of $823.50, plus the origination charge.

The Fisher defendants claim that they should not pay any more to the plaintiff than what plaintiff paid out, and consequently the plaintiff bank is only entitled to recover the sum of $8,326.50 plus interest and less any payments made.

One of the questions in this case is as follows:

"When the payee of a promissory note in the amount of $9,150 pays to and disburses for the maker of said note the sum of $8,326.50, how much can the payee recover from the maker?"

It is to be noted that the parties to this lawsuit are the original maker and payee on the note. The plaintiff is not a holder in due course. A holder in due course can collect the base amount of the note although he purchases the same at a discount.

It is well established as a rule that, as between the original parties to an instrument, the consideration may be inquired into.

It, therefore, follows that a person who is not a holder in due course may not collect the full amount thereon if there is a defense.

Want of consideration is a defense in an action by the original payee of a note against a maker thereof. In this case since the plaintiff is the original payee and not a holder in due course, then the defense of failure or lack of consideration may be raised by the defendants against this plaintiff.

The next question is whether the transaction in this case was a shift or device to evade the usury law. The evidence shows that the only contract was between the plaintiff and the Fisher defendants and that was as a result of the note and mortgage. The note and mortgage clearly indicates that the subject of the loan was the property in question.

The court must, therefore, examine all disbursements made by the plaintiff and deductions held by the plaintiff to determine whether or not the plaintiff violated the usury statute and whether or not the plaintiff collected more than the legal rate of interest allowed in Ohio.

The evidence shows that the plaintiff received the following for making the loan to the Fisher defendants:

1. Origination charge, $91.50 or 1 per cent.
2. Interest on the $9,150.00 note or 5¼ per cent.
3. Loan discount fee of $823.50 or 9 per cent.

Thus we find that the plaintiff bank actually disbursed the sum of $8,326.50 of the $9,150 loan for the Fisher defendants.

That simply means, the plaintiff bank realized an additional profit of $823.50 for making a loan to these defendants in addition to the interest and origination charge.

An early case dealing with this question is *Spalding* v. *Bank of Muskingum*, 12 Ohio 544, which held:

"An agreement between a bank and contractors on the public works, for the bank to make a loan to the state, to be applied to the public improvements on which they were engaged, and charge the contractors five per cent commission, is an illegal shift and device by the bank to obtain more than six per cent interest on its loans. Such a contract would not be enforced in favor of the bank against the contractors."

The Court said further:

"Whatever pretense may be set up to retain the amount in controversy, as commissions in the sums allowed, it is very clear it is one of those illegal shifts and devices to which the inordinate money-lender resorts to acquire to himself gains by an evasion of the wholesome provisions of the laws of the state, and it is much to be regretted that such efforts are but too frequently successful."

In the case of *Rose* v. *Baxter*, 67 Ohio App. 1, the court held:

"Whenever an agent, with the knowledge and consent of the lender, exacts from the borrower a bonus or commission for procuring the loan, which bonus or commission is deducted from the amount of the loan and paid by the lender direct to his agent or attorney, and only the balance left, after such deduction, is paid to the borrower, by the great weight of the authorities that which is paid as bonus or commission to the agent or attorney of the lender is considered as being a charge for the use of the money. Such bonus will be added to the amount of interest contracted for by the provisions of the note in determining whether or not such note is usurious."

The law against usury was made necessary and originated by reason of evil practices that prevailed to a large degree in the loaning of money, and out of that condition came the prohibition by express statute, Section 1343.01, Revised Code, which reads as follows:

"The parties to a bond, bill, promissory note, or other instrument of writing for the forebearance of payment of money at any future time, may stipulate therein for the payment of interest upon the amount thereof at any rate not exceeding eight per cent per annum payable annually."

Referring to item F of the closing costs of this case the evidence does not show the purpose of the so-called origination charge of $91.50 which is exactly one per cent of the face amount of the note. There is no explanation of what value or benefit is rendered to the Fisher defendants by this charge. This court must consider this charge as interest on the loan.

Again the evidence does not show the purpose of the loan discount fee which was a matter between the plaintiff bank and the seller of the property. It appears to this court that

this is a matter of the seller of the property reducing the sales price of the property, and in that event the purchaser is entitled to receive the full benefit of the reduction of the sales price.

The question is not what the parties called the transaction herein, but what does the transaction require the court to call it. It, therefore, is necessary for this Court to scan the transaction carefully to ascertain its real substance with a purpose of determining whether it is a disguised loan or something else.

The question in this case is not what price the Fisher defendants paid for their house, but rather what did the plaintiff receive for making this loan to the Fisher defendants. Therefore, is the plaintiff lender exacting an interest rate greater than eight per cent in making this loan to the borrowers? What is the plaintiff receiving for making the loan in this case? There can be no question that the plaintiff is receiving 15¼ per cent of the loan, which is in excess of the legal rate of eight per cent.

Having in mind, therefore, the purposes of the statute in its inception and the need for a rule understandable by laymen as well as the courts the Court expresses the following rule for determination of usury:

If the total amount contracted to be paid by a borrower before or after the use of money actually received as a loan for the period of time it is used, regardless of the names used for the various charges, is in excess of eight per cent per annum, then the excess is usurious.

This was the purpose and intent of the law. This is a rule easily followed and understood by all.

This court is not concerned with the proposition of whether or not eight per cent is sufficient money to receive by way of return in lending money. This is a matter to be determined by the state legislature.

The court cannot close its eyes to the pretense between lenders and the sellers of real estate who agree on circumstances which will result in a lenders receipt of interest in an amount greater than its legal rate of eight per cent. This court cannot approve a transaction which is merely a shift or device to evade the usury law.

The evidence in this case fails to show that plaintiff rendered any additional service to the Fisher defendants which would justify the plaintiff retaining the sum of $823.50.

The court finds that the plaintiff only disbursed or paid out for the Fisher defendants on the $9,150.00 note, the sum of $8,326.50.

The court finds that the Fisher defendants paid interest to the plaintiff on $9,150.00.

The court finds from the evidence that the note and mortgage provides a rate of interest within the law; however, the court finds further that the plaintiff did receive a bonus, points, or loan discount fee of $823.50, which together with the rate of interest constituted a usurious transaction in violation of the law.

The motion of the plaintiff for summary judgment is sustained. Judgment is rendered to the plaintiff for $8,326.50, plus interest, and less any credits or payments made on the note.

*Motion sustained in part.*