**Alexander SMITH, Trustee, et al., Plaintiffs,**

**v.**

**UNITED STATES CREDIT CORP., Defendant.**

Civ. A. No. 85–317–N.

United States District Court, E.D. Virginia, Norfolk Division.

Nov. 6, 1985.

Robin L. Tolerton, Smith & Tolerton, Norfolk, Va., for plaintiffs.

Alex T. Mayo, Jr., Bruce H. Matson, Kaufman & Canoles, Norfolk, Va., for defendant.

### MEMORANDUM ORDER

CLARKE, District Judge.

The defendant, United States Credit Corporation, seeks summary judgment against the plaintiffs, a trustee and two debtors, on all four counts of the plaintiffs' complaint.

Briefs have been submitted by the parties and a hearing on the motion was held on October 30, 1985. Accordingly, the matter is ripe for disposition.

The transaction involved concerns a promissory note under which the plaintiff debtors borrowed $18,350.00 and agreed to repay it at 14.5% interest over fifteen years. The promissory note was accompanied by a Truth in Lending Disclosure Statement, which set forth the note's effective annual percentage rate, the finance charge, and other relevant information. The Court first considers defendant's motion with respect to Counts II, III, and IV of the Complaint, which essentially allege violations of state and federal consumer credit disclosure regulations.

■ In Count II of the Complaint, plaintiffs allege that the defendant violated § 6.1–330.17 of the Virginia Code by failing to quote an effective annual percentage rate in the Note itself. Plaintiffs' contention is that the Note must be able to stand up to the disclosure requirements on its own. The Court, however, considers the Truth-In-Lending Disclosure Statement to be an integral part of the transaction, and finds the disclosure of an annual percentage rate therein, together with the annual rates disclosed in the Note, to be sufficient to satisfy § 6.1–330.17 as a matter of law.

■ For similar reasons, Count IV is also deficient as a matter of law. In Count IV, plaintiff alleges that defendant violated five regulations under the Federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* Plaintiff essentially argues that the defendant failed to accurately disclose the amount financed, finance charge, annual percentage rate, and the itemized breakdown of amounts financed because the Truth in Lending Disclosures were negated by the disclosure of different interest rates in the Note. It would be more accurate, however, to say that the Note's disclosures were supplemented by the Truth in Lending disclosures.

The disparity plaintiff complains of occurs whenever there are upfront charges in a loan transaction and is the basic reason why Truth in Lending Disclosure Statements are necessary in the first place. Moreover, the defendant used the specific language suggested by the regulations as a means of describing in layman's language the amount financed, the finance charge, and the annual percentage rate. In short, the borrowers were more than adequately informed of the details surrounding their loan transaction.

Plaintiffs' final regulatory contention in Count IV, that the required disclosures were not made before the transaction was consummated, is simply not supported by the dates on the respective documents nor even by the dates set forth in the Complaint. Accordingly, Count IV is deficient as a matter of law.

■ Count III of the Complaint, which alleges that the defendant's actions and misrepresentations violated the Virginia Consumer Protection Act, Va.Code Ann. § 59.1–196, *et seq*, is also without substantial merit. According to the Virginia statutes, the Virginia Consumer Protection Act does not apply to any aspect of a transaction authorized by state or federal law *or* regulated by the Federal Consumer Credit Protection Act. Va.Code Ann. § 59.1–199. Since under § 15 U.S.C. § 1603 consumer real estate transactions are covered by the Federal Consumer Protection Act, the Virginia Act is inapplicable. Additionally, since the Court's overall holding is that the transaction involved did not violate state lending and disclosure regulations, the Virginia Consumer Protection Act is inapplicable for that reason as well.

■ The Court now turns to defendant's motion as it relates to Count I of the complaint. The essence of the allegations in Count I is that defendant collected service charges and referral fees in excess of the amounts allowed by statute. Section 6.1–330.16(E) of the Virginia Code, which specifically governs loans such as plaintiffs' that are secured by a subordinate mortgage, reads in pertinent part:

E. Any loan secured by a subordinate mortgage ... may be lawfully enforced

at the interest rate stated therein. . . . Notwithstanding the foregoing, a service charge not exceeding two percent of the amount of the loan may also be imposed. Disclosure of charges, not otherwise specified in the note, deed of trust, or mortgage, in an interest disclosure pursuant to the federal interest disclosures law, shall constitute compliance with this statute.

Va.Code Ann. § 6.1–330.16(E) (1985 Supp.). It bears noting that the statute does not limit the interest rate that can be charged on these type loans.

The issue before the Court is whether the $2,560 up front fee charged the plaintiff is "initial interest" as claimed by the defendant, or is a service charge as is claimed by the plaintiffs. Since this charge amounted to 13.95% of the loan amount, if held to be a service charge it would be clearly excessive under § 6.1–330.16 (E). If held to be interest, it would not be excessive.

The term "service charge" is not defined anywhere in the statute, and counsel for the plaintiffs has not directed the Court to any authority supporting the proposition that an initial interest or prepaid interest charge of the type involved here is a service charge rather than interest.

The term "service charge" appears in at least ten different subsections of Chapter 7.2 of the Virginia Code, dealing with Money and Interest. *See* subsections 13, 14, 15, 16, 19, 20, 21, 23, 24 and 41 of § 6.1–330. The common meaning of the term "service charge" and the context in which it appears in these subsections makes it clear that service charges are charges imposed to cover the costs of processing or handling various financial transactions other than the cost of the money itself. *E.g.* Va.Code Ann. 6.1–330.20(A) (service charge of $1.50 per month authorized on open end credit plans). In banking parlance, the term service charges covers all fees charged customers other than interest. Perhaps the most common service charge is the one imposed on many checking accounts. This charge has absolutely nothing to do with the concept of interest.

Moreover, it is unlikely that a service charge would ever be considered in determining the true interest rate associated with a transaction. Here the $2,560 charge was used in computing the 19.42% annual percentage rate disclosed to the plaintiffs in the Truth In Lending Disclosure Statement. In this sense the initial the Truth In Lending Statement. In this sense, the initial interest charge is analogous to "points" or prepaid interest. In this regard, defendant refers the Court to a section of the Virginia Code where points are considered interest, and defendant argues quite persuasively that the "initial interest" charge involved here should be similarly treated.

The statute defendant refers to is the general usury statute and reads in pertinent part:

CONTRACTS FOR MORE THAN LEGAL RATE OF INTEREST.—Except as otherwise permitted by law, no contract shall be made, for the loan or forbearance of money at a greater rate of interest than eight per centum per annum, *including points* expressed as a percentage of the loan divided by the number of years of the loan contract. For the purpose of this section the term "points" is defined as the amount of money, or other consideration received by the lender, from whatever source, as a consideration for making the loan and not otherwise expressly permitted by statute.

Va.Code Ann. 6.1–330.11 (emphasis added). Points, as defined by the statute would seem to incorporate the "initial interest" charge collected here. Moreover, interest has long been defined within the Commonwealth for usury purposes as any "compensation taken for the loan or use of money." *Turner v. Turner,* 80 Va. 379 (1885).

The Court simply cannot read the service charge language of § 6.1–330.16(E) as plaintiff would have this Court read it without some indication that that is what the legislature intended, especially since the legislature so clearly addressed the handling of "points" in an analogous section of

the Code. In other words, if the legislative wanted to limit the "initial interest" or "points" that are charged on a second or third mortgage it likely would have done so using language similar to § 6.1–330.11. Accordingly, the Court finds as a matter of law that an initial interest charge of the type involved here is not a service charge for purposes of § 6.1–330.16 (E) of the Virginia Code.

■ Finally, the Court considers plaintiff's challenge to referral fees charged. As a part of the transaction the defendant paid a $1,000 referral fee to a third party, with this fee being paid out of the initial interest charge imposed on the plaintiff debtors. Plaintiffs' claim is that it is the borrower and not the lender who, in substance, pays the referral fee and that therefore, the fee is excessive under § 6.1–330.-24 of the Virginia Code.

Section 6.1–330.24 reads in pertinent part:

Broker's or finder's fees may be paid by the lender from the service charge or interest permitted under § 6.1–330.16 or a broker's fee, finder's fee or commission may be paid by the borrower not to exceed two per centum of the amount of the loan if the total interest, service charge, broker's fees, finder's fees or commissions do not exceed the amount of service charges and interest permitted under § 6.1–330.16.

The language of the statute clearly undercuts plaintiffs' position, as the statute distinguishes between referral fees paid directly by the borrower and those paid by the lender out service charges or interest charged the borrower.

Moreover, having held that the initial interest charge constituted an acceptable interest charge under § 6.1–330.16(E), plaintiffs' challenge to the referral fees is deficient as a matter of law because § 6.1–330.24 allows a finder or referral fee to be paid out of interest permitted under § 6.1–330.16. The Court thus GRANTS the defendant's Motion for Summary Judg-

ment with respect to all four counts of plaintiffs' Complaint.

IT IS SO ORDERED.