**In re Thomas M. and Nancy WILLIAMS, Debtors.**

**Thomas M. And Nancy WILLIAMS, Plaintiffs,**

**v.**

**Robert G. SEELEY, Equity Capital Mortgage, Inc., Advantage Title, L.C.**

**and**

**Charles Evans, Defendants.**

**Bankruptcy Nos. 97–13759(MVB). Adversary No. 97–1304.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Nov. 13, 1998.

---

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

In the case at bar, we must determine whether plaintiffs may recover money and damages for amounts paid in conjunction with a loan agreement. After hearing counsels' arguments, the Court took this matter under advisement. For the following reasons, we conclude plaintiffs are entitled to damages in the amount of $8,550, plus reasonable attorneys' fees and costs, pursuant to Virginia's subordinate mortgage lending statute.

▮ The Court possesses jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).[1] Venue is proper by 28 U.S.C. § 1409(a).

This adversary proceeding deals with the negotiation of a second deed of trust on real property. Debtors Thomas M. and Nancy J. Williams ("plaintiffs") sought to avoid foreclosure on their home by taking out a second mortgage. Plaintiffs contacted Charles Evans ("Evans") through an advertisement in the *Washington Post*, who had advertised assistance for those whose homes were in danger of foreclosure.

After speaking with plaintiffs, Evans forwarded their phone number to Equity Capital Mortgage, Inc. ("Equity Capital"), a Virginia mortgage brokerage business. Plaintiffs dealt with its agent, Ernie Del

Rossi. Equity Capital brokered plaintiffs' second deed of trust to Robert G. Seeley.

On November 14, 1996, plaintiffs executed a $30,000 second trust note against their home with Seeley at 15.99% interest per annum to be paid in monthly installments of $417.16. Payments were to commence on December 14, 1996. The entire unpaid principal balance, plus accrued interest, "ballooned" and became due on November 14, 1999.

In conjunction with this loan, plaintiffs were charged a loan discount fee of 15% or $4,500 by Seeley, a brokerage fee of 5% or 1,500 by Equity Capital and another "fee" of 3.5% or $1,050 by Evans to be paid at closing. Seeley's company, Advantage Title, LC ("Advantage Title"), conducted the closing.

Plaintiffs filed their Chapter 7 bankruptcy petition on May 20, 1997. Plaintiffs brought this adversary proceeding against Seeley, Equity Capital, Advantage Title and Evans (collectively "defendants") on August 25, 1997 seeking to recover monies paid and damages incurred in conjunction with this second mortgage.

Count I of plaintiffs' complaint claims that the loan fees, discounts, initial interest, points and other charges violated Virginia Code § 6.1–330.71. Count II alleges a breach of fiduciary duty claim against Seeley for his role as settlement agent and lender, as well as his failure to provide plaintiffs with an interest rate disclosure form pursuant to Regulation Z, 12 C.F.R. § 226.1.

In Count III, plaintiffs contend Advantage Title breached its fiduciary duty by charging usurious fees in relation to their second mortgage and by having a conflict of interest with Seeley as its owner. In addition, Advantage Title failed to provide plaintiffs an interest rate disclosure statement conforming to 15 U.S.C. § 1601 and Regulation Z, 12 C.F.R. § 226.1 prior to closing.

---

**1.** This proceeding is a non-core related to proceeding as provided for in 11 U.S.C. § 157. The test for determining whether an adversary proceeding relates to debtor's bankruptcy is whether the outcome of that proceeding could conceivably affect debtor's estate or alter debtor's rights, liabilities, options, or freedom of action. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 6, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n. 11 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). In the case at bar, plaintiffs' confirmed Chapter 13 plan specifically provides payment in full of Seeley's claim, the amount of which is contingent upon the outcome of this proceeding.

Plaintiffs assert claims of fraud and conspiracy in Count IV. Plaintiffs allege that Seeley, Evans and Equity Capital knowingly acted in concert with one another with the intent to deceive and take advantage of plaintiffs in arranging this loan.

■ The Court held a hearing on June 2, 1998 on defendants' motion for summary judgment. The Court granted the motion as to paragraph 18 of plaintiffs' amended complaint dealing with Regulation Z.[2] The Court affirmed this decision at the July 15th trial. Also at trial, the Court granted defendants' renewed motion for summary judgment as to Counts II and III, leaving only the issue of damages concerning the interest and fee overcharges alleged in Count I and Count IV's fraud and conspiracy claims.

In Count I, plaintiffs assert that defendants violated Virginia Code § 6.1–330.71 by drafting and executing a usurious loan. Section 6.1–330.71 outlines the appropriate charges on subordinate mortgage loans by certain lenders, which provides in relevant part:

**Charges on subordinate mortgage loans by certain lenders. -**

A.1. Any person, other than lenders enumerated in ' 6.1–330.73,[3] may charge add-on interest that results in an annual yield of not more than eighteen percent upon loans secured in whole or in part by a subordinate mortgage or deed of trust on residential real estate improved by the construction thereon of housing consisting of one to four family dwelling units.... An add-on interest loan may be made only

under this subsection and shall not exceed a period of five years and one month.

D.1. Any loan secured by a subordinate mortgage or deed of trust on such residential real estate where the interest is charged at an annual interest rate on the unpaid balance thereof may be lawfully enforced at the annual interest rate stated in the contract of indebtedness on the principal amount of the loan. Such annual interest rate may vary in accordance with an exterior standard.

VA.CODE ANN. § 6.1–330.71(A) & (D). Section 6.1–330.71 focuses on two types of subordinate mortgage loans.[4] Subsection A deals with add-on interest loans and subsection D concerns loans where the lender charges interest at an annual rate on the loan's unpaid balance. VA.CODE ANN. § 6.1–330.71(A) & (D).

■ Plaintiffs correctly state that the Virginia Code does not define "add-on interest loan". However, cases from throughout the country refer to such a loan as one where the *total amount of interest over the term of the loan is added to the principal sum and the borrower repays the combined amount in monthly installments. Seitz v. Lamar Sav. Ass'n,* 618 S.W.2d 142, 143 (Tex.Civ.App.–Austin 1981); *see Mack v. Newton,* 737 F.2d 1343, 1367 n. 33 (5th Cir.1984); *Securities and Exch. Comm'n v. Advance Growth Capital Corp.,* 470 F.2d 40, 48 (7th Cir.1972); *Brown Co. v. Bruce (In re Bruce),* 40 B.R. 884, 885 (Bankr.W.D.Va.1984) (Pearson, J.). Since the lender calculates interest on the original balance, instead of the declining balance as in simple interest loans, the effective

---

2. The Court also heard defendants' argument concerning the constitutionality of Virginia Code § 6.1–330.71 under the Equal Protection Clause. We found that the purpose of this section is to protect consumers from being charged exorbitant interest rates and fees on certain subordinate mortgages. As a result, we could not find as a matter of law that no relation exists between the purpose of this legislation and its classification distinguishing second mortgage companies from more traditional financial institutions, which are heavily regulated. Defendants have not put forth any additional evidence to warrant a reconsideration of our decision denying summary judgment.

3. Section 6.1–330.73 provides:
 Sections 6.1–330.71, 6.1–330.72 and 6.1–330.85 shall not apply to loans made by any bank, savings institution, industrial loan association, credit union, or to a seller in a real estate sales transaction who take a subordinate mortgage on such real estate.
 VA.CODE ANN. § 6.1–330.73.

4. The Virginia Code defines "subordinate mortgage" as "one subject to a prior mortgage or deed of trust in existence at the time of the making of the loan secured by such subordinate mortgage or deed of trust." VA.CODE ANN. § 6.1–330.71(A)(1). Navy Federal Credit Union holds the priority lien on plaintiffs' principal residence.

rate of interest is almost double the stated rate. Dr. Larry Chonko, *Glossaries: Business, the Economy and World Affairs* (last modified June 21, 1996) <http://hsb.baylor.edu/html/chonko/bus1301/glosfin1.htm>.

■ The loan in the case at bar does not fit this definition. Seeley required plaintiffs to make monthly payments of $417.16 from December 14, 1996 to November 14, 1999, at which time the remaining balance, including interest and principal, would come due or "balloon".[5] It appears from the note and balloon payment rider that Seeley charged 15.99% interest on the unpaid balance of the loan up until the last balloon payment.[6] As a result, subsection D of § 6.1–330.71 applies, which allows for the parties' agreement to set the annual interest rate.[7] *See, e.g., Smith v. United States Credit Corp.*, 626 F.Supp. 102, 104 (E.D.Va.1985), *aff'd*, 801 F.2d 661, 664 (4th Cir.1986) (no cap on interest rate on § 6.1–330.71's predecessor, Va.Code Ann. § 6.1–330.16). Despite plaintiffs' assertions at trial, subsection A's 18% cap does not apply. The stated 15.99% interest rate, plus a 5% loan discount fee are therefore permissible interest charges pursuant to subsection (D)(2). Va.Code Ann. § 6.1–330.71(D)(2).

In addition to the annual interest rate on the loan, plaintiffs claim that defendants charged fees in excess of those permitted by Virginia law. Sections 6.1–330.71(D)(2), (F) and 6.1–330.72 list the amount of fees that lenders may assess to the borrower in conjunction with executing a subordinate mortgage. Section 6.1–330.71(D)(2) and (F) provide:

> D.2. [T]he lender may charge the borrower a loan fee not exceeding five percent of the principal amount of the loan. The lender may also charge the borrower with the actual costs of the loan as permitted by ' 6.1–330.72.

F. Except for the loan fee permitted in this section, no discount, initial interest, points or charges by any other name may be collected, charged or added to a loan secured by a subordinate mortgage or deed of trust upon such residential real estate.

Va.Code Ann. § 6.1–330.71(D)(2) & (F).

Furthermore, section 6.1–330.72, in relevant part, states:

> (A) Broker's or finder's fees may be paid by the lender from the loan fee or interest permitted under § 6.1–330.71. A broker's fee, finder's fee or commission may be paid by the borrower not to exceed five percent of the principal amount of the loan if the total of the loan fee permitted under § 6.1–330.71 and broker's fees, finder's fees or commissions does not exceed five percent of the principal amount of the loan.

Va.Code Ann. § 6.1–330.72(A).

■ Plaintiffs were charged a 15% or $4,500 loan discount fee by Seeley, a 5% or $1,500 brokerage fee by Equity Capital and another "fee" of 3.5% or $1,050 by Evans. Plaintiffs therefore paid 23.5% or $7,050 in fees. This amount clearly exceeds that permitted by Virginia law. As outlined above, § 6.1–330.72(A) effectively places a 5% cap on the total loan fees, broker's fees and finder's fees, when paid by the borrower. Plaintiffs therefore should have been assessed only a sum of $1,500 for the combination of these items.

■ Of the above-stated overcharges, plaintiffs argued at trial and defendants conceded, that Seeley's assessment of a 15% or $4,500 loan discount fee constituted additional pre-paid interest on the loan. *See Garrison v. First Fed. Sav. & Loan Ass'n of S.C.*, 241 Va. 335, 402 S.E.2d 25, 29–30 (Va.1991);

---

**5.** A balloon note is a type of traditional fixed rate mortgage loan, which becomes 100% due after a specified amount of time and payments. When the loan matures, the borrower must pay the remaining amount due on the loan in cash, i.e., the balloon payment, or refinance the debt. Strategy Funding (visited Nov. 9, 1998) <http://www.strategyfunding.com/terms.htm>.

**6.** Section 2 of plaintiffs' note specifically states that "[i]nterest will be charged on [the] unpaid

balance until the full amount of principal has been paid."

**7.** Aside from the statute's plain language, in tracing the changes to § 6.1–330.71 and its predecessor, § 6.1–330.16, the Virginia legislature has demonstrated its intent not to cap interest rates on a loan like plaintiffs', regardless of the maturity time.

see also *Huntsman v. Commissioner of Internal Revenue*, 91 T.C. 917, 919 n. 3, 1988 WL 122291 (1988) *rev'd on other grounds*, 905 F.2d 1182 (1990); *Bankers Guarantee Title & Trust Co. v. Fisher*, 2 Ohio Misc. 18, 204 N.E.2d 103, 105–07 (Ohio Com.Pl.1964). Seeley therefore overcharged 10% or $3,000 in interest pursuant to § 6.1–330.71(D)(2).

Virginia Code § 6.1–330.57 applies to the calculation of these damages under 6.1–330.71, which provides for the recovery of twice the total usurious interest paid, as well as costs and attorneys' fees.[8] In applying the statute, plaintiffs are entitled to $3,000 doubled, or $6,000. This amount added to the 5% or $1,500 and 3.5% or $1,050 in overcharged broker's and finder's fees gives plaintiffs damages totaling $8,550, plus costs and reasonable attorneys' fees.[9]

Count IV of plaintiffs' complaint alleges common law conspiracy and fraud. Plaintiffs accuse Seeley, Evans and Equity Capital of knowingly acting in concert with one another with an intent to deceive and exploit plaintiffs in executing this loan.

 Common law conspiracy consists of "two or more persons combined to accomplish, by some concerted action, some criminal or unlawful purpose or some lawful purpose by a criminal or unlawful means." *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280 (4th Cir.1987); *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 453 S.E.2d 261, 267 (Va.1995); *Hechler Chevrolet v. Gen. Motors Corp.*, 230 Va. 396, 337 S.E.2d 744, 748 (Va. 1985). To constitute a conspiracy, the conspirators must have a preconceived plan and unity of design and purpose. 15 C.J.S. Conspiracy § 2, pg. 997; *Neff v. World Pub. Co.*, 349 F.2d 235, 257 (8th Cir.1965); *Bull v. Logetronics, Inc.*, 323 F.Supp. 115, 131 (E.D.Va.1971). Plaintiffs therefore must demonstrate that defendants conspired to intentionally, or by design, misrepresent a material fact or produce a false impression in order to mislead them and induce them to enter into the loan agreement. 8B Mi-CHIE'S JUR. *Fraud and Deceit* 2 (1997).

 Plaintiffs allege defendants knew or should have known that their second mortgage violated Virginia=s usury and disclosure laws, and that defendants conspired to take advantage of plaintiffs' vulnerable financial situation. However, plaintiffs have failed to establish the existence of defendants' concerted action or a preconceived plan to defraud them. Nor have plaintiffs put forth any facts to indicate that defendants knowingly acted in such a way to accomplish an unlawful purpose. The mere fact that defendants participated in this transaction does not constitute adequate evidence to support plaintiffs' conspiracy claim.

We find that while the defendants charged plaintiffs excessive interest and fees, there is insufficient evidence to prove fraud or conspiracy in the execution of this loan. For the foregoing reasons, the Court awards plaintiffs $8,550 in overcharged interest and fees pursuant to Virginia Code §§ 6.1–330.71(D) and 6.1–330.57, plus costs and reasonable

---

8. Virginia Code section 6.1–330.57, in relevant part, states:

A. If interest in excess of that permitted by the applicable statute is paid upon any loan, the person paying may ... recover from the person taking or receiving such payments:

The total amount of the interest paid to such person in excess of that permitted by applicable statute;

Twice the total amount of interest paid to such person during the two years immediately preceding the date of the filing of the suit or action; and

Court costs and reasonable attorneys' fees. VA.CODE ANN. § 6.1–330.57.

9. Punitive damages may be awarded where there is showing of "ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of rights of another." *Lee v. Southland Corp.*, 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978). The purpose of punitive damages is to vindicate the plaintiff, punish the wrongdoer and set an example. *Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432, 435–36 (5th Cir.1962); *Adams v. Hunter*, 343 F.Supp. 1284, 1290 (D.S.C.1972), *aff'd*, 471 F.2d 648 (4th Cir.1973). Despite plaintiffs' allegations, we find that defendants' conduct falls short of the actual malice required to establish punitive damages under Virginia law, and there-· fore decline to award such damages. *See Peacock Buick v. Durkin*, 221 Va. 1133, 1138, 277 S.E.2d 225, 228 (1981); *Jordan v. Sauve*, 219 Va. 448, 452, 247 S.E.2d 739, 741 (1978).

attorneys' fees.[10] The Court will enter a separate order consistent with this opinion.

---

10. The Court will hear arguments at a later time to determine the amount of costs and attorneys' fees, as defendants dispute the reasonableness of plaintiffs' claim.