## LUMBERMEN'S MUTUAL CASUALTY COMPANY

### V.

## MICHAEL S. KELLER

Record No. 940717

April 21, 1995

Present: All the Justices

*Thomas G. Bell, Jr. (Timberlake, Smith, Thomas & Moses*, on briefs), for appellant.
*Franklin R. Blatt* for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this appeal, we consider whether an insurance company's motor cargo liability coverage for the "death or destruction" of livestock also included coverage for their damage.

On September 1, 1990, Wayne G. Shifflett, a Virginia cattle dealer, sold an Iowa farmer 83 "mixed steers" that Shifflett had just bought at a livestock auction market in West Virginia. Shifflett sold the steers as "feeder cattle," which are young cattle bought to be fattened for sale several months later.

Michael S. Keller, a livestock trucker, agreed to haul the cattle to Iowa. During the trip, Keller's truck overturned in an accident near Danville, Illinois, on September 2. Several steers were killed in the accident and a number were injured. Six steers were sold the following day at a nearby livestock auction market, and the remaining sixty-eight steers were transported to a livestock auction market in Galesburg, Illinois, where they were sold on September 4.

A number of the 68 steers showed evidence of bleeding and had various injuries, including cuts and cracked shoulders and legs. Hence, before the steers were sold at the auction, all bidders were advised that they had been injured in a truck accident. Although the steers were sold as feeder cattle, because of their condition, their average weight declined about six percent and their average per pound price dropped from the $93.25 per hundred pounds price that Shifflett paid a few days before to $75.08 per hundred pounds, a loss in per pound value of approximately 18.5%. The six steers sold in Danville as feeder cattle had a total weight of 3,995 pounds and sold at an average price of $73.36 per hundred pounds.[1]

Lumbermen's Mutual Casualty Company (the company) insured Keller against liability for "Direct Physical 'Loss' " to covered property in its basic Motor Cargo Liability Insurance Policy.

---

[1] The record does not disclose the nature of the injuries to the six steers, nor whether they were sold as feeder cattle. However, since both parties apparently assumed that they suffered injuries similar to the 68 other steers and that they also were sold as feeder cattle, we will make the same assumptions.

"Loss" is defined therein as "accidental loss or damage." However, the basic policy excludes coverage for live animals and poultry. By an endorsement, the company deleted the coverage exclusion and changed the coverage provision to read: "We will pay for *Direct* Physical *'Loss'* which *results in death or destruction* to covered property from [collision or upset of Keller's truck]." (Emphasis added.)

The company conceded liability coverage for the loss of the steers killed in the accident, but denied coverage for the injured steers on the ground that their injury and consequent loss in value was not a "destruction" as that term is commonly understood and as it is used in the policy. Keller disagreed and filed this action for a declaratory judgment of his rights under the policy. The parties submitted the coverage issue to the trial court, stipulated the above facts, submitted memoranda, and argued the case.

Keller successfully contended in the trial court that because the word "destruction," as used in the policy, is ambiguous, it is broad enough to cover the damage to the steers as reflected in their loss in value. The company appeals.

■■■ The controlling principles are well settled:

> "An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction." *Hill v. State Farm Mutual Auto. Ins.*, 237 Va. 148, 152, 375 S.E.2d 727, 729 (1989). Additionally, in the absence of an ambiguity . . . we must interpret the contract by examining the language explicitly contained therein. "[Where] an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Globe Company v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965) (citations omitted).

*Graphic Arts Mutual Ins. v. C.W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990).

The controversy centers upon the word "destruction." As pertinent here, "destruction" is defined as "a killing or annihilation (destruction of sheep by dogs and wild animals) . . . a bringing to an end . . . a condition of having been destroyed." *Webster's Third New International Dictionary* 615 (1986). "Destroy" in the

context of insurance policies "is often applied to an act which renders the subject useless for its intended purpose, though it does not literally demolish or annihilate it." *Black's Law Dictionary* 449 (6th ed. 1990). On the other hand, "damage" is defined as "[l]oss, injury, or deterioration, caused by the negligence, design, or accident of one person to another, in respect of the latter's person or property." *Id.* at 389.

Relying upon the presumption that courts will not construe language in an insurance policy as meaningless, Keller claims that the word "destruction" is ambiguous as used in the endorsement and, therefore, can be construed to mean "damage."[2] Keller argues that the word "destruction" as used in the policy is broad enough to cover damage substantially affecting the cattle's value and does not necessarily require their complete "demolishment." Hence, Keller argues that the 18.5% reduction in the cattle's value was "the requisite destruction of the cattle" to justify coverage. However, as noted above, the word "destruction" requires at the least that the property be damaged to such an extent as to make it useless for its intended purpose.

In the only case cited by either party dealing with insurance policy coverage for death or destruction of animals, the Supreme Court of New Hampshire relied upon the *Black's Law Dictionary* definition of "destroy" in holding that dairy cows were "destroyed" within the meaning of the policy when rendered useless as dairy cows following attacks by dogs, an event covered by the policy. *Preston v. National Grange Mut. Ins.*, 317 A.2d 787, 789 (N.H. 1974). Here, however, the steers were not rendered useless as feeder cattle, but were merely damaged and diminished in value by the accident. Indeed, the injured steers were sold as feeder cattle.

And we also reject Keller's contention that these cattle no longer served the purpose of "healthy" feeder cattle, as evidenced by the complaints of the purchasers of the injured steers that the steers did not "perform as well as they had hoped." If we adopted that contention, almost any injury or damage could be considered a "destruction" under the policy.

Accordingly, we conclude that the language in question was not ambiguous and that its ordinary and customary meaning excludes

---

[2] Contrary to one of Keller's contentions, we think that the word "destruction" was used to extend coverage to the humane killing of an animal that had been seriously injured in a collision covered by the policy.

insurance coverage for the injuries to the cattle. Therefore, the judgment of the trial court will be reversed and final judgment will be entered for the company.

*Reversed and final judgment.*