**In re Thomas M. WILLIAMS, Nancy Williams, Debtors.**

**Thomas M. Williams, et al., Plaintiffs,**

**v.**

**Robert G. Seeley, et al., Defendants.**

**Bankruptcy No. 97–13759–MVB. Adversary No. 97–1304.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Oct. 15, 1999.

Richard J. Mudd, Alexandria, VA, for plaintiffs.

Charles A. Price, Cregger & Lazarus, LLP, Annandale, VA, Seeley, Equity Capital Mortgage, Inc., and Advantage Title, L.C.

## MEMORANDUM OPINION

STEPHEN S. MITCHELL, Bankruptcy Judge.

This adversary proceeding is before the court on remand from the United States

District Court for the Eastern District of Virginia for additional findings relevant to the calculation of damages.[1] A hearing was held in open court on August 23, 1999, at which the plaintiffs and the defendants were each represented by counsel. Both parties filed memoranda setting forth their position on the issue of damages. Neither party offered additional evidence, but the court has taken judicial notice of the final report and account filed by the chapter 13 trustee and has been advised by counsel concerning a foreclosure sale that took place subsequent to the original trial of this action. Upon consideration of the record and argument of counsel, the court makes the following additional findings.

### Additional Findings of Fact

1. At the loan closing held on September 14, 1996, Mr. Seeley, as lender, provided the settlement agent, Advantage Title, a net check in the amount of $25,500.00, representing the $30,000.00 loan amount less the 15% loan discount fee of $4,500.00.

2. From the funds supplied by Mr. Seeley, the settlement agent made disbursements on September 14, 1996, as follows:

| Payee | Amount |
| --- | --- |
| Clerk, Alexandria Circuit Court | $144.00 |
| Alexandria Real Estate Title | 90.00 |
| Advantage Title | 902.60 |
| Equity Capital Mortgage, Inc. | 1,500.00 |
| Charles Evans | 1,050.00 |
| First American Title Insurance Co. | 17.40 |
| Thomas M. and Nancy J. Williams | 21,796.00 |

3. The settlement statement (Form HUD–1) prepared by the settlement agent and delivered to the borrowers shows the following amounts as "PAID FROM BORROWER'S FUNDS AT SETTLEMENT":

| Payee | Description | Amount |
| --- | --- | --- |
| [Robert G. Seeley] | Loan discount to lender | $4,500.00 |
| Equity Capital Mortgage, Inc. | Broker fee | 1,500.00 |
| Charles Evans | Fee | 1,050.00 |
| Advantage Title | Settlement fee | 250.00 |

1. This action was originally heard by the Hon. Martin V.B. Bostetter, Jr., who retired on June 30, 1999, after 40 years of service as a bankruptcy referee and bankruptcy judge. It was reassigned to the undersigned bankruptcy judge shortly before Judge Bostetter's retirement.

| Payee | Description | Amount |
|---|---|---|
| Alexandria Real Estate Title | Title examination | 125.00 |
| Advantage Title | Title insurance binder | 50.00 |
| Advantage Title | Document preparation | 295.00 |
| First American Title Ins. Co. | Title insurance | 187.00 |
| Advantage Title | Title review fee | 85.00 |
| [Clerk of Court] | Recording fees, mort. | 87.00 |
| [Clerk of Court] | ditto, subord. agrmts. | 75.00 |
| Total | | $8,204.00 |

4. Prior to the commencement of this adversary proceeding on August 25, 1997, the debtors made 5 payments on the Seeley loan:

| Date | Amount |
|---|---|
| December 14, 1996 | $417.16 |
| January 23, 1997 | $417.16 |
| February 24, 1997 | $417.16 |
| August 2, 1997 | $458.88 |
| August 2, 1997 | $458.88 |

The two payments made on August 2, 1997—which was after the filing of Mr. and Mrs. Williams' chapter 13 petition on May 20, 1997—included the 10% late fee required by the note for any payment made more than 10 calendar days after its due date.

5. Applying the five payments made by Mr. and Mrs. Williams to the first five payments that were contractually due on the note, the total credits would be as follows: $77.44 to late fees, $1,996.39 to interest, and $89.41 to principal.[2]

6. Subsequent to the commencement of this adversary proceeding, the chapter 13 trustee disbursed to Mr. Seeley, on account of his pre-petition arrearage claim that was to be paid through the plan,[3] the sum of $766.26, of which $457.42 was credited by the trustee to principal and $308.84 to interest.

7. Subsequent to the original trial of this action, the holder of the first-lien deed of trust, Navy Federal Credit Union, was granted relief from the automatic stay and foreclosed under its deed of trust. The sale yielded a surplus of $37,936.31 for potential application to Mr. Seeley's deed of trust. That sum is being held by the foreclosure trustee pending a final ruling in this adversary proceeding.

8. Subsequent to the District Court remand, the debtors' chapter 13 case was dismissed on August 24, 1999, with the court expressly retaining jurisdiction over this action.

9. The amount the debtors actually paid in excess of what is permitted under Virginia Code § 6.1–330.71 is $4,500.00.

## Discussion

### A.

As discussed at length in this court's original opinion, *Williams v. Seeley (In re Williams)*, 227 B.R. 83 (Bankr.E.D.Va. 1998) (Bostetter, C.J.), and in the opinion of the District Court on appeal, *Seeley v. Williams*, No. 99–181–A (E.D.Va. June 9, 1999) (Cacheris, J.), this is an action by the debtors, Thomas M. and Nancy Williams, to recover illegal loan charges in connection with a $30,000.00 second deed of trust loan made to them by Robert G. Seeley

---

2. An amortization schedule, which the court has prepared based on the information in the record, is attached as an exhibit to this opinion. The documents in evidence do not expressly state how the note, which balloons after 23 payments of $417.16, is amortized. It is not difficult, however, to calculate (using an ordinary business calculator) the amortization period of a constant payment installment note, given the principal, rate of interest, and payment amount. For a $30,000.00 note repayable with interest at 15.99% in monthly installments of $417.16, the amortization period is 240 months. However, it is not necessary to know the amortization period—or, indeed, to have access to any calculating tools other than pencil and paper—to determine what portion of a given month's payment is attributable to interest and what portion to reduction of principal. For the first payment, the interest due is simply the annual rate expressed as a decimal (0.1599) divided by the number of months per year (12) multiplied by the principal ($30,000.00), or $399.75. The remainder of the $417.16 payment, or $17.41, is thus a reduction of principal. Subtracting that from the original principal leaves a balance of $29,982.59. This figure is substituted for the original $30,000.00, and the process is repeated.

3. The confirmed chapter 13 plan had provided for the payment through the trustee of a prepetition arrearage on the Seeley note in the amount of $1,334.92 over 36 months with interest at 10%.

approximately six months prior to the filing of their chapter 13 petition. The purpose of the loan was to obtain cash to bring the existing first deed of trust loan on their house current.

The judgment entered by Chief Judge Bostetter found Mr. Seeley liable to the debtors in the amount of $8,550.00 for loan charges in excess of that permitted by the applicable Virginia statute.[4] Included in that figure was a $1,050 "finder's fee" paid at settlement to Charles Evans, who was named as a defendant in this action but was never served. On appeal, the District Court held that the fee paid to Mr. Evans was not a proper element of damages. Slip op. at 12. Additionally, the District Court held that the calculation of damages could only include interest the debtors "actually paid" and not interest they were *charged* but did not pay. Slip op. at 11. The District Court noted that the record was unclear what amount the debtors had actually paid and remanded the action to this court "to make a factual finding as to the amount the [debtors] actually paid Seeley in excess of what is permitted under Virginia Code section 6.1–330.71." Slip op. at 11–12.

### B.

What on its face should be a simple matter of accounting turns out to be a metaphysical puzzle worthy of a Duns Scotus or Thomas Aquinas. The dispute centers on the meaning to be given to the word "paid" in Va.Code Ann. § 6.1–330.57(A). Defendants Seeley and Equity Capital contend that the $4,500.00 loan discount fee charged to the debtors was never in fact "paid"—or, more accurately, was paid only to the extent that it was included in the five payments made by the debtors—because Seeley *deducted* those fees before delivering the loan proceeds check to the settlement agent. The debtors, for their part, argue that they "paid" the $4,500.00 just as surely as if Seeley

had delivered a $30,000.00 check at settlement, and they had written a check back to him for $4,500.00.

There are no reported Virginia cases construing the term "paid" as it is used in Va.Code Ann. § 6.1–330.57(A). Since the statute does not provide a definition, the court must assume that the term is to be given its normal, everyday meaning. *See Bell v. Dorey Elec. Co.,* 248 Va. 378, 382, 448 S.E.2d 622, 624, (1994) (turning to Black's Law Dictionary and Webster's for the everyday meaning of terms of a statute); *see also Lumbermen's Mut. Cas. Co. v. Keller,* 249 Va. 458, 460–61, 456 S.E.2d 525, 526 (1995) (looking to Black's Law Dictionary and Webster's Dictionary for the everyday meaning of terms in an insurance policy). In the context in which it is used in the statute, "paid" is the past tense of the verb "pay." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1659 (1976). The dictionary definitions of "pay" include the following: "to satisfy (someone) for services rendered or property delivered: discharge an obligation" and "to make any agreed disposal or transfer of (money)." *Id.* Black's Law Dictionary defines "pay" as "to discharge a debt by tender of payment due; to deliver to a creditor the value of a debt, either in money or in goods for his acceptance." BLACK'S LAW DICTIONARY 1128 (6th ed.1990). Unfortunately, neither of these definitions materially assists in determining whether the debtors "paid" the discount loan fee within the meaning of the statute when the lender deducted it from the loan proceeds.

Courts have addressed the issue of when loan discount loan fees are "paid" in two different but distinct contexts: (1) determining whether the loan fee was required to be classified as a *"prepaid* finance charge" for the purpose of disclosures required by the Truth in Lending Act; and (2) determining what year the fee was paid for the purposes of deducting interest paid under the Internal Revenue Code. In the

---

**4.** The judgment also included costs and attorneys' fees "in an amount later to be determined." No hearing has ever been requested or held on the amount of those fees.

tax context, the cases have rather consistently held that fees to obtain a loan are not "paid" in the year in which the loan was obtained but must be amortized over the life of the loan even if the lender deducted the funds from the loan proceeds, as in the present case. *Moore v. Commissioner of Internal Revenue*, 68 T.C.M. (CCH) 909 (1994); *Schubel v. Commissioner of Internal Revenue*, 77 T.C. 701, 707, 1981 WL 11231 (1981); *Rubnitz v. Commissioner of Internal Revenue*, 67 T.C. 621, 628–29, 1977 WL 3716 (1977). Under this analysis, "payment" of the $3,000.00 in excess points would be amortized over the 24–month life of the loan. Thus, since the debtors had made only 5 of the 24 scheduled monthly payments prior to filing suit, they would be treated for tax purposes as having paid only 5/24 of the $3,000.00 in excess points, or $625.00, in that time frame.

In the Truth in Lending cases, by contrast, courts have classified such up-front loan fees as a *prepaid* finance charge even when they were deducted by the lender from the loan proceeds. *See* 12 C.F.R. § 226.2(a)(23) (defining "prepaid finance charge" as "any finance charge paid separately in cash ... *or withheld* from the proceeds of the credit at any time"); *Jones v. Community Loan & Invest. Corp.*, 526 F.2d 642, 646 (5th Cir.1976) ("Deferring collection of the loan fee by adding it on to the other amounts financed does not change its character as a prepaid fee"); *Grubb v. Oliver Enterprises, Inc.*, 358 F.Supp. 970, 972 (N.D.Ga.1972) (loan fee authorized by Georgia Industrial Loan Act and withheld from loan proceeds is a "pre-

paid finance charge" for the purpose of Truth in Lending disclosures).

A discussion by the Court of Appeals for the District of Columbia in a usury case is instructive. *Montgomery Fed. Sav. and Loan Assn. v. Baer*, 308 A.2d 768, 773 (D.C.1973). In that case, the lender deducted the points from the principal amount of the loan, with the result that, although the face amount of the loan was $10,000, the borrowers received only $9,600 because four points had been charged. *Id.* at 769. While holding that, for the purposes of determining the *annual rate* of interest under the District of Columbia usury statute, the points had to be amortized over the life of the loan, the court did state plainly its view that the points had been *"paid in full* the first year" of the loan. *Id.* at 773 (emphasis added).

The court finds the reasoning of the Truth in Lending cases more apposite than the tax decisions.[5] Treating the $4,500 loan discount fee has having been "paid" at settlement is fully consistent with the settlement statement (Form HUD–1), which expressly describes it as "PAID FROM BORROWER'S FUNDS AT SETTLEMENT." That Mr. Seeley did not deliver a check for the full amount of the loan and contemporaneously receive payment of the discount fee back from the debtors, but instead simply withheld the fee, is a distinction without a difference: the economic effect of the transaction is the same under either scenario. Either way, the debtors walked away from settlement with several thousand dollars less in their pockets than they were entitled to.[6] As the Fifth Cir-

---

5. Basically, the tax decisions adopt the assumptions of accrual-based accounting, under which items of income or expense are entered in the books when they are incurred, not necessarily when the payment or receipt of cash takes place. The cost of obtaining a loan is thus treated as providing a benefit extending over the life of the loan and is allocated accordingly.

6. As noted in the body of this opinion, the trustee who foreclosed under the first deed of

trust is holding funds that are apparently sufficient to pay the full amount of the note (including the points which the debtors never received, and which Mr. Seeley never parted with). Additionally, since the debtors' chapter 13 case has been dismissed, they did not receive a discharge and remain fully liable for any deficiency to the extent the surplus foreclosure proceeds do not satisfy the note. Thus, the effect of a ruling that the debtors have not *already* "paid" the excessive discount fees would be that the debtors would

cuit cogently observed in *Jones*, when presented with a series of loan transactions in which the loan fee was deducted before the proceeds were paid to the borrower:

> That the loan fee is to be paid by the borrower to the lender is not even open to question. When it is to be paid is the issue. *Every documentary and financial fact indicates that the lender collects the loan fee at the time the credit is extended.*

526 F.2d at 648 (emphasis added).

## C.

One additional point requires comment. The statute on which the original opinion relied for the measure of damages, Va. Code Ann. § 6.1–330.57(A), has both restitutionary and penalty components. Thus, not surprisingly, it allows the aggrieved borrower to recover "the total amount of the ... interest paid *in excess* of that permitted by applicable statute" (emphasis added). To this restitutionary amount, however, it adds a penalty of "[t]wice the *total amount of interest paid* ... during the two years immediately proceeding the date of the filing of the suit" (emphasis added).

The original opinion by Chief Judge Bostetter concluded that the loan charges made *in excess* of those permitted by statute totaled $5,550.00 ($3,000.00 of the points, the $1,500.00 broker's fee, and the $1,050 finder's fee). The District Court reversed as to the finder's fee and as to any "illegal charges that the [debtors] did not actually pay." Those illegal charges total $4,500.00 ($3,000.00 of the points and the $1,500.00 broker's fees). The $1,500.00 broker's fee was unquestionably "actually paid." Not only does the settlement statement certify that it was "paid" from the debtors' funds, but a check was actually written by the settlement agent to the broker for that amount from the loan proceeds. Additionally, for the reasons stated above, the court also finds and concludes that the points, although deducted prior to the delivery of the loan check, were "actually paid" at settlement for the purpose of Va.Code Ann. § 6.1–330.57(A).

In addition to restitution, the statute, as noted above, also provides for recovery of a penalty consisting of twice the total amount of the interest paid in the two years prior to the filing of the adversary proceeding. The plaintiffs argue, with some force, that the original judgment dramatically short-changes them as to this component of damages. A natural reading of the statute would seem to allow penalty damages of twice the total amount of *all* interest, legal or otherwise, paid in the two years prior to the filing of suit. The prior opinion, however, read the statute as providing for the recovery only "of twice the total *usurious* interest paid." 227 B.R. at 88. Additionally, for reasons that are not altogether clear, the prior opinion included the points in the computation only of the penalty damages, and not of the restitution damages. Thus, judgment was entered for the debtors only in the amount of $8,550.00 (the $3,000.00 in illegal points, doubled, plus the broker's fee and finder's fee).

The plaintiffs, however, argue that they should have had judgment for considerably more. As they calculate damages, they are entitled to the illegal portion of the points ($3,000.00), plus a penalty of $12,-988.30 (twice the sum of the $4,500.00 in points and the interest portion[7] of the five payments they made), *plus* $2,550.00 in "other" illegal charges (the $1,500.00 in broker's fees and the $1,050 in finder's

---

have to pay them *now* out of the surplus funds held by the foreclosure trustee or out of their other assets. A finding that the debtors have "actually paid" the excessive charges, by contrast, not only reflects the economic reality of the situation, but allows the debtors' claim for restitution of those charges to be offset against the amounts due under the note, thereby ensuring that, at the end of the day, Mr. Seeley will have collected no more than he is entitled to by statute.

7. The debtors calculate this amount as $1,994.15, which differs from the court's computation by approximately two dollars.

fees). That is, the debtors assert they are entitled not only to the sums set forth in Va.Code Ann. § 6.1–330.57(A), but also, under Va.Code Ann. § 6.1–330.71(F), to any other "discount, initial interest, points or charges by any other name ... collected, charged, or added to [the] loan[.]" Even backing out the finder's fees—inclusion of which is clearly precluded by the terms of the District Court's remand—they argue that they are entitled to judgment in the amount of $17,488.30.

The difficulty with this argument, however persuasive in part, is that the District Court's order on appeal expressly *affirmed* the prior judgment in all respects *except* for the inclusion of the finder's fee and *except* for any fees charged but not actually paid. Thus, this action is not before the court for a general recomputation of damages, but only for the limited purpose of carrying out the District Court's mandate. *See United States v. Bell*, 5 F.3d 64, 66 (4th Cir.1993) (district court erred in allowing withdrawal of guilty plea on remand from court of appeals for resentencing; mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court"). Consistent, therefore, with the limited scope of the remand, the court concludes that the plaintiffs are entitled to judgment in the revised amount of $7,500.00 (the $3,000.00 in illegal points, doubled, plus the $1,500.00 broker's fees). A separate order will be entered amending the judgment accordingly.

### EXHIBIT

#### LOAN AMORTIZATION TABLE

Principal Amount = $30,000.00
Interest Rate = 15.990%
Number of Payments = 240
*Balloons at Payment 24
Payments per Year = 12
Payment = $417.16

| Payment | Interest | Principal | Balance |
| --- | --- | --- | --- |
| 1 DEC 14 1996 | $399.75 | $17.41 | $29,982.59 |
| 2 JAN 14 1997 | $399.52 | $17.64 | $29,964.95 |
| 3 FEB 14 1997 | $399.28 | $17.88 | $29,947.07 |
| 4 MAR 14 1997 | $399.04 | $18.12 | $29,928.96 |
| 5 APR 14 1997 | $398.80 | $18.36 | $29,910.60 |
| 6 MAY 14 1997 | $398.56 | $18.60 | $29,892.00 |
| 7 JUN 14 1997 | $398.31 | $18.85 | $29,873.15 |
| 8 JUL 14 1997 | $398.06 | $19.10 | $29,854.05 |
| 9 AUG 14 1997 | $397.81 | $19.35 | $29,834.69 |
| 10 SEP 14 1997 | $397.55 | $19.61 | $29,815.08 |
| 11 OCT 14 1997 | $397.29 | $19.87 | $29,795.21 |
| 12 NOV 14 1997 | $397.02 | $20.14 | $29,775.07 |
| 13 DEC 14 1997 | $396.75 | $20.41 | $29,754.66 |
| 14 JAN 14 1998 | $396.48 | $20.68 | $29,733.98 |
| 15 FEB 14 1998 | $396.21 | $20.95 | $29,713.03 |
| 16 MAR 14 1998 | $395.93 | $21.23 | $29,691.79 |
| 17 APR 14 1998 | $395.64 | $21.52 | $29,670.28 |
| 18 MAY 14 1998 | $395.36 | $21.80 | $29,648.47 |
| 19 JUN 14 1998 | $395.07 | $22.09 | $29,626.38 |
| 20 JUL 14 1998 | $394.77 | $22.39 | $29,603.99 |
| 21 AUG 14 1998 | $394.47 | $22.69 | $29,581.30 |
| 22 SEP 14 1998 | $394.17 | $22.99 | $29,558.31 |
| 23 OCT 14 1998 | $393.86 | $23.30 | $29,535.02 |
| *24 NOV 14 1998 | $393.55 | $29,535.02 | $0.00 |

* Final payment = $29,928.57