UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: THOMAS M. WILLIAMS; In Re:
NANCY WILLIAMS,
<u>Debtors.</u>

THOMAS M. WILLIAMS; NANCY
WILLIAMS,                                                    No. 00-1930
<u>Plaintiffs-Appellants,</u>

v.

ROBERT G. SEELEY; EQUITY CAPITAL
MORTGAGE, INCORPORATED,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-99-181-A, 97-13759-MVB, 97-01304)

Argued: April 2, 2001

Decided: June 13, 2001

Before MOTZ and GREGORY, Circuit Judges, and
Frederic N. SMALKIN, United States District Judge for the
District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Richard Joseph Mudd, Alexandria, Virginia, for Appellants. Charles Albert Price, CREGGER & LAZARUS, L.L.P., Annandale, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Nancy J. Williams and Thomas M. Williams ("Plaintiffs") appeal the district court's damages award in a usury case. One of the defendants, Robert G. Seeley ("Seeley"), a non-institutional lender, assessed Plaintiffs charges and fees in connection with a second mortgage loan in excess of those allowable under Virginia law. Among the excessive charges and fees was a $4,500 "loan discount." Plaintiffs sued Seeley in bankruptcy court under the Virginia usury statutes and prevailed. On appeal, the district court ultimately awarded damages that excluded the loan discount on the ground that Plaintiffs had not actually "paid" the discount, as required under Virginia law. Plaintiffs then filed this appeal, alleging that they actually paid the loan discount at the time Seeley reserved it from the loan proceeds. We affirm.

I.

In 1996, Plaintiffs sought to avoid a foreclosure on their home by executing a second deed of trust. They contacted Charles Evans ("Evans") after viewing an advertisement in the <u>Washington Post</u>. Evans referred them to Equity Capital Mortgage, Inc. ("Equity"), a Virginia mortgage brokerage business. Equity then brokered Plaintiffs' second deed of trust to Seeley.

2

On November 14, 1996, Plaintiffs and Seeley executed a $30,000 loan at an annual interest rate of 15.99% (the "Note"). The Note was secured by a second deed of trust against Plaintiffs' home (the "Deed of Trust"). Under the Note, Plaintiffs agreed to pay Seeley in monthly installments of $417.16.[1] The first installment was due on December 14, 1996. Plaintiffs were to continue making monthly payments until they had paid all of the principal, interest, and any other charges described in the Note.[2] Neither the Note nor the Deed of Trust spoke to the manner in which the Note would be amortized. However, the Note contained an acceleration clause providing that the entire unpaid principal balance, along with accrued interest, "ballooned" and became due on November 14, 1999.

Advantage Title, LC ("Advantage") conducted the closing. After reserving a $4,500 "loan discount," Seeley delivered to Advantage a check in the amount of $25,500.[3] From this amount, Advantage deducted Equity's $1,500 broker's fee, Evans's $1,050 finder's fee, and a variety of other charges, including a fee for itself. Advantage ultimately disbursed $21,796 to Plaintiffs.

A Housing and Urban Development settlement statement (the "Settlement Statement") accompanied the Note and Deed of Trust. The Settlement Statement summarized the loan transaction, including the charges for which Plaintiffs were responsible on the date of the closing (the "Settlement Charges"). The loan discount was listed on the Settlement Statement as a "Loan Discount to Lender" in the column entitled "Paid from Borrowers' Funds at Settlement."

Plaintiffs made only five monthly payments under the Note. The first three payments were timely made. On May 20, 1997, Plaintiffs filed a Chapter 13 bankruptcy petition, listing Seeley as a creditor. Plaintiffs then made the next two payments, including the applicable late fees, in August 1997. Plaintiffs paid a total of $2,169.24 in monthly installments.

_____

[1] The Note also provided that a ten percent late fee would be assessed on any late payment.
[2] The Note provided that monthly payments were to be applied to interest before principal.
[3] The Note and Deed of Trust are silent regarding the loan discount.

On August 25, 1997, Plaintiffs filed suit against Seeley, Equity, Advantage, and Evans, alleging, in pertinent part, that loan fees, discounts, initial interest, points, and other charges had been collected, charged, or added to the Note in violation of Virginia law. The United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, Judge Martin V.B. Bostetter, Jr., Chief Judge, presiding, agreed and awarded Plaintiffs damages in the amount of $8,550, in addition to reasonable attorney's fees and costs. See 227 B.R. 83 (E.D. Va. 1998).

In calculating damages, the court found that Va. Code Ann. §§ 6.1-330.71(D)-(F) and 6.1-330.72(A) effectively capped the total loan fee, broker's fee, and finder's fee, when paid by the borrower, at five percent of the principal amount of the loan. Accordingly, the court reasoned that Plaintiffs should have paid a maximum of $1,500 for the combination of these fees. Because Seeley reserved a $4,500 loan discount, and Plaintiffs paid a $1,500 broker's fee and a $1,050 finder's fee, the Court found that Plaintiffs had paid $5,550 in illegal charges, $3,000 of which constituted excessive interest. [4] Pursuant to Va. Code Ann. § 6.1-330.57(A), the court then doubled the amount of excess interest that Plaintiffs paid, and added the resulting $6,000 figure to the combination of the broker's fee and finder's fee to arrive at the $8,550 damages figure.

Seeley and Equity appealed, arguing that the court had improperly awarded Plaintiffs damages relating to interest they had not actually paid. The appellants' main contention was that although Seeley had charged the $4,500 loan discount to Plaintiffs at the time of the closing, Plaintiffs had not actually paid it at that time. The United States District Court for the Eastern District of Virginia, Judge James C. Cacheris, presiding, agreed and reversed the bankruptcy court's decision "insofar as its damages calculation included illegal charges that the [Plaintiffs] did not actually pay. . . ." (J.A. at 55.) The court also reversed "insofar as the damages calculation included Charles Evans's finder fee."[5] Id. The court then remanded the case with an instruction to "make a factual finding as to the amount that the [Plain-

_____

[4] The court viewed the loan discount as a form of pre-paid interest.
[5] The court reversed as to Evans's finder's fee because Plaintiffs apparently never served Evans in the underlying suit.

4

tiffs] actually paid Seeley in excess of what is permitted under [Virginia law]." (J.A. at 53-54.)

On remand, the United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division, Judge Stephen S. Mitchell, presiding,[6] revised the amount of damages to exclude Evans's finder's fee, but determined once again that Plaintiffs had actually paid the loan discount.[7] See 241 B.R. 387 (E.D. Va. 1999). In analyzing the loan discount issue, the court analogized to (a) a line of tax cases concerning what year a loan discount was deemed "paid" for purposes of calculating allowable interest deductions under the Internal Revenue Code; and (b) a series of cases concerning whether discount loan fees were classified as "prepaid finance charges" for purposes of assessing disclosure requirements under the Truth in Lending Act, 15 U.S.C.A. §§ 1601-1693r (West 2000). The court found the Truth in Lending Act cases more apposite on the grounds that the view expressed in those cases not only reflected the economic reality of the situation, but was also consistent with the characterization of the loan discount as "paid from borrower's funds at settlement" set forth on the Settlement Statement. The court therefore concluded that both the loan discount and the broker's fee were "actually paid" at settlement, and entered judgment for Plaintiffs in the amount of $7,500, in addition to attorney's fees, court costs, and post-judgment interest.[8]

Seeley and Equity again appealed the bankruptcy court's decision. Relying on two early cases, the district court reversed, holding specifically that "the $4,500 withheld by Seeley as a loan discount fee was not `paid' by [Plaintiffs]." (J.A. at 77.) The court also found that

_____

[6] The Honorable Martin V.B. Bostetter, who heard the original action in the bankruptcy court, retired on June 30, 1999. The case was reassigned to Judge Stephen S. Mitchell shortly before Judge Bostetter's retirement.
[7] The court also created an amortization schedule and determined that the $2,169.24 Plaintiffs had paid in monthly installments should be allocated as follows: $1,996.39 toward interest, $89.41 toward principal, and $77.44 in payment of late fees.
[8] Under 28 U.S.C.A. 1961 (West 2000), interest was to run from November 13, 1998, the date of entry of the original bankruptcy court order.

5

because the loan was usurious, Plaintiffs were still entitled to recover twice the total amount of other interest they had paid to Seeley. The court relied on the bankruptcy court's calculation to determine that $1,996.39 of the $2,169.24 Plaintiffs had paid in monthly installments was attributable to the payment of interest. Adding the resulting $3,992.78 to the $1,500 broker's fee, the court entered judgment for Plaintiffs in the amount of $5,492.78, plus reasonable attorney's fees, court costs, and post-judgment interest.

Plaintiffs now appeal the district court's order insofar as the court ruled that the $4,500 loan discount was not paid at settlement. They contend that, because the loan discount was paid at closing, it should have been included as an item of damages.

II.

In a bankruptcy case, "[w]e review de novo the decision of the district court, effectively standing in its place to review directly the findings of fact and conclusions of law made by the bankruptcy court." Butler v. David Shaw, Inc., 72 F.3d 437, 440 (4th Cir. 1996). "While we exercise plenary review of the bankruptcy court's legal conclusions, its factual findings may not be set aside unless they are clearly erroneous." Id. at 441.

III.

The only issue for decision is whether or not the $4,500 loan discount Seeley reserved at settlement was actually paid at that time for purposes of determining damages under Va. Code Ann.§§ 6.1-330.57(A), 6.1-330.71(D)-(F), and 6.1-330.72(A). We hold that it was not.

In McCarthy v. First National Bank of Rapid City, South Dakota, 223 U.S. 493 (1912), the Supreme Court squarely faced the question of whether a loan discount reserved at settlement is actually paid at that time. In deciding a case brought under the National Bank Act, ch. 106, § 30, 13 Stat. 108 (1864) (current version at 12 U.S.C.A. § 86 (West 2000)), the Court noted that banks frequently reserve and deduct interest in advance by way of a loan discount. In analyzing

6

whether such a loan discount is "paid" at the time it is reserved, the Court stated:

> These deductions by way of discount are not treated as payments. They do not come out of the debtor's pocket, though they lessen the amount which he receives when the loan is made, and when sued he may plead usury and escape liability for the amount thus charged or retained. But such reservation by the bank, not being a payment made by the debtor, he, of course, cannot avail himself of the right to maintain a suit given only to those who have paid interest.

McCarthy, 223 U.S. at 499.

The Virginia Supreme Court explicitly adopted this position in a similar case, Baker v. Lynchburg National Bank, 91 S.E. 157 (Va. 1917). See Baker, 91 S.E. at 160 ("It is true, as counsel for appellants contend, that the reserving of this discount by the bank was not a payment of it."). As the district court noted, Baker and McCarthy deal squarely with, and control, the issue presented here. We further note that the rule expressed in those cases is a sound one. Here, Seeley reserved $4,500 of his own funds at settlement. Until Plaintiffs made payments under the loan from their own pockets, it cannot be said that they made payments for which they should be able to recover under Va. Code Ann. § 6.1-330.57(A).

We also find unavailing Plaintiffs' argument that Baker and McCarthy are distinguishable on the ground that they involve short-term, unsecured loans that required the borrowers to repay the discounted interest over time. Plaintiffs have not cited, nor have we found, a single case holding that a loan discount is in fact paid at the time of the reservation. To the contrary, every case we reviewed concluded that interest reserved in this manner is not paid until the borrower makes an actual payment. We see no reason to depart from this rule here.

We therefore conclude that the $4,500 loan discount Seeley withheld at the time of settlement was not "paid" at that time for purposes

7

of determining damages under Va. Code Ann. §§ 6.1-330.57(A), 6.1-330.71(D)-(F), and 6.1-330.72(A).[9]

IV.

For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED

_____

[9] The parties have appealed no other rulings of the district court concerning the damages calculation. We therefore express no other views on that subject.

8